# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE:  THE MATTER OF THE    ) | |
| COMPLAINT OF KIRBY INLAND    ) | |
| MARINE, L.P., etc., PETITIONING    ) | CIVIL ACTION 13-0319-WS-C |
| FOR EXONERATION FROM OR    ) | |
| LIMITATION OF LIABILITY    ) | |

## ORDER

The Court has by separate order granted the motion of claimants Casey Tyson, Justin Kyle Benoit and Maebell Muns Benoit (collectively, "the Tyson-Benoit claimants")[1] to clarify the scope of the limitation injunction entered herein. (Doc. 42).  That order clarifies that the injunction does not extend to the prosecution of claims or cases against Oil Recovery Co., Inc. of Alabama ("ORC").

ORC and an apparently related entity, ORCA, Inc. (collectively, ORCA") opposed the Tyson-Benoit claimants' motion.  (Doc. 28).  The conclusion of their brief reads as follows:

> Wherefore, premises considered, ORC and ORCA respectfully request that this Court deny the Personal Injury Claimants' Motion to Clarify and enter an order that the Personal Injury Claimants (and any other potential state court plaintiffs) are precluded from prosecuting claims against ORC and ORCA arising out of the April 24, 2013 barge explosion in any state court pending this Court's determination of liability.

(*Id*. at 9-10).  The Court construes this request as a motion for an order precluding the prosecution in state court of claims against ORCA.  *See* Fed. R. Civ. P. 7(b)(1)

---

[1] Some parties refer to the Tyson-Benoit claimants as the "personal injury claimants."  (Doc. 28).  Because there are other personal injury claimants besides the Tyson-Benoit claimants, the Court uses the quoted term only to refer to all such claimants as a group.  The plaintiff refers to the Tyson-Benoit claimants as "the claimants."  (Doc. 25).  Because there are other claimants besides the personal injury claimants, the Court uses the quoted term only to refer to all claimants of any type.

("A request for a court order must be made by motion.").  The precise issue of whether the Court may or should enjoin the prosecution of claims against ORCA has been fully briefed by ORCA, the plaintiff, the Tyson-Benoit claimants, and all other claimants, (Docs. 12, 25, 27, 28, 31, 33, 37), and the motion is ripe for resolution.[2]

## BACKGROUND

On April 24, 2013, a fire and explosions occurred on the Mobile River. The filings indicate that this calamity occurred while two barges owned by the plaintiff were being cleaned at ORCA's facility by ORCA employees.  The plaintiff, the owners of the tug that delivered the barges to ORCA, and the owners of another vessel in the area at the time filed three separate actions for exoneration or limitation.  The limitation plaintiffs[3] all are, or claim to be, owners of a vessel potentially related to the casualty.  ORCA claims no similar status; it is at best a potential joint tortfeasor.

## DISCUSSION

Subject to various restrictions and qualifiers, "the liability of the owner of a vessel" may be limited to "the value of the vessel and pending freight."  46 U.S.C. § 30505(a).  "The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter."  *Id*. § 30511(a). "When an action has been brought under this section and the owner has complied

---

[2] The requests for oral argument, (Doc. 26; Doc. 28 at 1), construed as motions, are **denied**.  *See* Local Rule 7.3.

The plaintiff argues it would be premature to lift the stay prior to August 21, 2013, the deadline for filing claims.  (Doc. 25 at 2-3).  ORCA, however, is not requesting a lifting of the stay as to it but an extension of the stay to cover it.  The obscure prematurity argument raised by certain claimants, (Doc. 31), fails for similar reasons.

[3] The Court refers to the plaintiff herein simply as "the plaintiff" and to the plaintiffs in the three limitation actions collectively as "the limitation plaintiffs."

with subsection (b), all claims and proceedings against the owner related to the matter in question shall cease." *Id*. § 30511(c).[4]

"The procedure for a limitation action is now found in Supplemental Admiralty and Maritime Claims Rule F." *Lewis v. Lewis & Clark Marine, Inc*., 531 U.S. 438, 448 (2001). "Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court … for limitation of liability pursuant to statute." Supplemental Rule F(1). "Upon compliance by the owner with the requirements of subdivision (1) of this rule, all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease." *Id*. Rule F(3). "On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." *Id*.

In both the statute and the rule, reference is made repeatedly and uniformly to the owner of a vessel and not to any other class of individual or entity. It is the "owner of a vessel" that may bring a limitation action, and it is claims "against the owner" or "the plaintiff" (defined as a "vessel owner") that are stayed. The Fifth Circuit, discussing a prior but substantively parallel version of the Limitation Act, has declared that benefits of the limitation remedy and the cessation of other claims and proceedings "are, by their plain terms, conferred on ship *owners* only." *Zapata Haynie Corp. v. Arthur*, 926 F.2d 484, 485 (5th Cir. 1991) (emphasis in original). The Tyson-Benoit claimants urge *Zapata* as dispositive, but other cases indicate more play in the joints.

In *Maryland Casualty Co. v. Cushing*, 347 U.S. 409 (1954), the Supreme Court directed that a limitation claimant's direct action against the limitation plaintiff's underwriter be continued until after completion of the limitation

---

[4] "In this chapter, the term 'owner' includes a charterer that mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement." 46 U.S.C. § 30501.

proceedings.  *Id*. at 423.  There was no majority opinion in *Cushing* and only a single ground common to five Justices.  The four-Justice plurality and Justice Clark agreed that allowing the direct action to proceed could result in exhaustion of insurance benefits in that action, leaving the limitation plaintiff (if successful in obtaining limitation) to pay the limitation amount out of its own pocket rather than by its insurer – a result that would violate important rights contemplated by the Limitation Act.  *Id*. at 417-19; *id*. at 423-26 (Clark, J., concurring).

In addition to *Cushing*, the plaintiff and ORCA rely on two appellate decisions.  In *Guillot v. Cenac Towing Co*., 366 F.2d 898 (5th Cir. 1966), the limitation claimants sought to pursue a lawsuit against the owner's president and vice-president and a direct action against these executive officers' liability insurer.  The trial court allowed the filing of these suits (to avoid limitations problems) but not their prosecution.  *Id*. at 902-03.  The Fifth Circuit identified two risks in allowing the suits to proceed.  First, insurance covering the owner but also the officers as additional insureds might be exhausted in satisfying a judgment against the officers, resulting in the same problem as in *Cushing*.  *Id*. at 906.  Second, the actions "inescapably trespass[s] upon the exclusive domain of the Admiralty in adjudicating whether the quality of the actions of the corporate officers is such as to charge the corporate shipowner with privity and knowledge of them."  *Id*.  Such privity or knowledge would defeat limitation, 46 U.S.C. § 30505(b), and, due to the close relation between owner and executive officer, res judicata and/or collateral estoppel could bar the owner from contesting privity and knowledge in the limitation action.  *Id*.  Even if it did not, the limitation judge likely would be unable to ignore the verdicts against the officers in resolving the limitation issue.  *Id*. at 907.  The *Guillot* Court thus permitted entry of a stay, but only "to assure an orderly efficient administration of that part of the controversy committed exclusively to the Admiralty," *id*., and only on the condition that the limitation plaintiff agree that any favorable findings or conclusions concerning the nature or

4

quality of the officers' actions would not foreclose independent examination and determination of such matters in the direct actions.  *Id*. at 908.[5]

In *In re:  Complaint of Paradise Holdings, Inc*., 795 F.2d 756 (9th Cir. 1986), suit was filed against the owner and the vessel captain.  *Id*. at 758.  The Ninth Circuit held that the limitation judge properly stayed this action as to the captain because allowing the action to proceed could, as in *Cushing*, drain the owner's insurance and because the state litigation could have some preclusive effect on issues in the limitation proceeding.  *Id*. at 762-63.

*Cushing*, *Guillot* and *Paradise* support the proposition that a limitation judge may sometimes enjoin claims against non-owners, but the concerns animating these decisions are not present here.  As to the depletion of the plaintiff's insurance, ORCA is a stranger to the plaintiff, and there is not the slightest suggestion that they share insurance coverage, the benefits of which could be siphoned off to the plaintiff's detriment should suit against ORCA proceed.

As to the potential for state court determinations carrying legal or practical preclusive effect in this proceeding, ORCA suggests there is a danger of inconsistent results because it has filed herein a claim for indemnity and/or contribution and "will also seek indemnity and/or contribution from [the three limitation plaintiffs] in any state court lawsuit."  (Doc. 28 at 6).  ORCA continues that both courts thus will make determinations of the relative fault of itself and the limitation plaintiffs and that "[t]he determinations of fault made by each court may conflict with each other and may subject the parties to this (and the other) limitation actions to the effects of collateral estoppel."  (*Id*.).  But a necessary premise of ORCA's argument – that it will pursue indemnity/contribution claims against the limitation plaintiffs in state court before this Court resolves the

---

[5] *Guillot* also involved an attempted direct action against the owner's underwriter, as to which the Court followed *Cushing* by staying the action pending resolution of the limitation proceedings.  366 F.2d at 905.

limitation issue – is fatally flawed; the limitation injunction entered herein precludes ORCA from doing so.

Both ORCA and the plaintiff cite *In re:  Complaint of Clearsky Shipping Corp*., 1997 WL 772808 (E.D. La. 1997), as showing that allowing the injured claimants to proceed against ORCA could result in conflicting findings.  That case (which apparently has never been cited in another opinion) provides little analysis and less authority, but it does state that, in evaluating another tortfeasor's claims for indemnity and contribution, the limitation judge would have to consider the fault attributable to that tortfeasor, which findings might conflict with the findings of the state court should a claimant be permitted to proceed against the tortfeasor before limitation was resolved.  *Id*. at *2.

But ORCA and the plaintiff have not explained how the *Clearsky* Court's concern could be present here.  Louisiana is a comparative fault state, and "the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty …."  La. Civ. Code art. 2323A.  Thus, the state court in *Clearsky* would be required to assign a percentage of fault to each potentially culpable entity, largely mimicking the limitation judge's task in evaluating indemnity and contribution claims.

Alabama, in contrast, does not recognize comparative fault.  Rather, "[u]nder Alabama law governing joint and several liability, "[a] tort-feasor whose negligent act or acts proximately contribute in causing an injury may be held liable for the entire resulting loss."  *Holcim (US), Inc. v. Ohio Casualty Insurance Co*., 38 So. 3d 722, 729 (Ala. 2009) (emphasis in original; internal quotes omitted).  The state court thus will not decide the percentage of fault to be assigned to any of the limitation plaintiffs, or even to ORCA; either ORCA will be found not liable or it will be found liable for the entirety of the claimants' damages.  In neither event is it possible for this Court to make an inconsistent finding.

Unable to show any risk of depleted insurance, inconsistent results or collateral estoppel, ORCA and the plaintiff are reduced to arguing that less weighty matters – which no cited appellate decision has recognized as sufficient to extend the limitation stay beyond the owner and its property – nevertheless should persuade the Court to do so.

The first of these is "judicial economy." The plaintiff and ORCA rely on many cases for the proposition that a key purpose of the limitation procedure is to bring together in one proceeding all claims *against the owner*.[6] The procedure is no doubt efficient and economical, and protective of the rights of both the owner and the claimants to a potentially limited fund, but allowing the personal injury claimants to proceed against ORCA in state court does not in any way undercut this economy, since all claims against the owner and its vessel remain within the limitation proceeding.[7]

The plaintiff and ORCA identify only two cases citing "judicial economy," but neither advances their position. The *Clearsky* Court acknowledged that unidentified "concerns of judicial efficiency and economy prompted" it initially to preclude the prosecution of claims against joint tortfeasors outside the limitation proceeding but, in the order on which the plaintiff and ORCA rely, the Court shifted to the inconsistent-results rationale discussed above. 1997 WL 772808 at

---

[6] The plaintiff and ORCA cite several cases stating that the limitation concursus extends to "all claims" or "every dispute," but their cases address only claims and disputes against the owner, not claims against unrelated, land-based tortfeasors arising out of the casualty. For example, ORCA stresses *British Transport Commission v. United States*, 354 U.S. 129 (1957), but that case involved only the claims of two owners against each other and of injured parties against them both. *Id*. at 130. The plaintiff frankly acknowledges that a limitation proceeding "provides a single forum in which all claimants may seek relief *against the vessel owner*, in personam, *and against the vessel*, in rem." (Doc. 25 at 5 (emphasis added)).

[7] The *Cushing* plurality noted that "[d]irect actions against the liability underwriter of the shipowner or charterer would detract from the benefit of a concursus …." 347 U.S. at 416. But a direct action encompasses resolution of the injured party's claim against the insured limitation plaintiff and so effectively removes that claim from the limitation proceeding. Nothing remotely similar can occur here.

*2.  In *In re:  Complaint of Shell Oil Co.*, 780 F. Supp. 1086, the Court acknowledged judicial economy as "the bedrock of the Limitations Act and procedures," but it relied on that concern only to reject the injured parties' attempt to sue the owner in another capacity outside the limitation context.  *Id*. at 1091.

Nor are the inefficiencies of allowing the state action against ORCA to proceed particularly impressive, distilling into a single phrase:  "duplicative discovery."  (Doc. 25 at 8; Doc. 28 at 9).  Even if it were shown that the parties cannot coordinate discovery between the two proceedings,[8] the plaintiff and ORCA have not explained how any resulting inconvenience to them outweighs the inconvenience to the personal injury claimants of delaying their potential recovery from ORCA.  Much less do the plaintiff and ORCA explain how any inconvenience to them could outweigh the prejudice to the personal injury claimants, should limitation be granted, of having ORCA's liability to them ultimately determined by a federal judge rather than by a state jury.  *Cf. Guillot*, 366 F.2d at 907 (recognizing the injured party's "valuable right to have the personal unlimited liability of the corporate officers determined in the forum of their choice and … by a jury").

ORCA offers prejudice as a final basis for staying state litigation against it. (Doc. 28 at 9).  ORCA identifies no case ever suggesting prejudice to a limitation-ineligible tortfeasor as justifying the extension of injunctive protection to it, and it seems unlikely that the Limitation Act – designed as it is to aid vessel owners and claimants against them – contemplates concern for such a tortfeasor merely because it is also a claimant.  But, in any event, ORCA's alleged "prejudice" is modest to the point of imaginary.  ORCA first re-packages duplicative discovery as prejudice, but it is no more impressive in this wrapping.  ORCA next conceives

---

[8] The plaintiff insists that "[t]he parties can stipulate or this Court may order that discovery within the limitation proceeding may be used for any subsequent state court lawsuits related to the incident," (Doc. 25 at 8), a position that suggests coordinated discovery between two lawsuits is also attainable, mooting the plaintiff's protestation it has "no standing" to participate in the depositions of ORCA's employees.  (*Id*.).

itself prejudiced because the limitation injunction precludes it from obtaining fact discovery from the plaintiff herein. (*Id*. at 6-7, 9). ORCA's premise simply does not exist; while the limitation injunction precludes ORCA from prosecuting any claim "against" the plaintiff, (Doc. 8 at 3), it does not insulate the plaintiff from providing discovery for use in connection with the personal injury claimants' suits against ORCA.

The plaintiff and ORCA acknowledge that, even if the circumstances on which they rely existed, the Court would possess "considerable," even "broad" discretion whether to extend the stay to cover ORCA. (Doc. 25 at 6, 8; Doc. 28 at 9). As discussed above, those circumstances do not exist. Even if they did, however, the Court would exercise its discretion against the requested extension, given the absence of a discernible impairment of any key purpose of the Limitation Act and the potentially prejudicial impact of such a stay on the personal injury claimants.

The plaintiff's final argument is that the Tyson-Benoit claimants should not be allowed to proceed against ORCA before all claimants herein, including ORCA, the other limitation plaintiffs, and all personal injury claimants, enter "appropriate stipulations" which "protect[t] the [plaintiff] from the risk of judgment in excess of the limitation fund until the federal court has determined the [plaintiff's] right to limitation." (Doc. 25 at 11 (emphasis added)). But here there is no such risk to be alleviated, since neither the personal injury claimants nor ORCA can, in the state lawsuits, obtain any judgment against the limitation plaintiffs (since the actions are stayed as to them). All that can occur is that the personal injury claimants receive one or more judgments against ORCA, which will supply a numerical value to ORCA's previously filed claims against the limitation plaintiffs for indemnity and/or contribution. The cases on which the plaintiff relies – which address permitted suits *against the limitation plaintiff* outside the limitation proceeding – are inapposite.

**CONCLUSION**

For the reasons set forth above, ORCA's motion to preclude the Tyson-Benoit claimants and all other potential state court plaintiffs from prosecuting their claims against ORCA in state court pending this Court's determination of liability, (Doc. 28), is **denied**.


DONE and ORDERED this 6th day of August, 2013.


s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE