IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:  THE MATTER OF THE         )
COMPLAINT OF KIRBY INLAND         )
MARINE, L.P., etc., PETITIONING   )   CIVIL ACTION 13-0319-WS-C
FOR EXONERATION FROM OR           )
LIMITATION OF LIABILITY           )

## ORDER

This matter is before the Court on the motion of claimants Casey Tyson, Justin Kyle Benoit and Maebell Muns Benoit ("the movants") for an order to increase the limitation fund and security therefor.  (Doc. 14).[1]  The interested parties have filed briefs in support of their respective positions, (Docs. 15, 22, 23), and the motion is ripe for resolution.  (Doc. 16).

## BACKGROUND

On April 24, 2013, a fire and explosions occurred on the Mobile River, with several persons injured as a result.  The filings indicate that this calamity occurred while two barges owned by the plaintiff herein were being cleaned at a facility run by Oil Recovery Company, Inc. of Alabama ("ORC").  The plaintiff filed this action for exoneration or limitation along with affidavits that the post-incident, salvage value of the barges was $420,000 and the value of pending freight $9,000, as well as a bond in that amount.  (Doc. 1).  The Court approved the security, preserving the right of any claimant to contest the amount or value of the plaintiff's interest and apply to have the Court fix a higher value.  (Doc. 8 at 2).  This latter provision is in accord with Supplemental Admiralty Rule F(7),

---

[1] Claimants George Hiram Lee Erickson and Althea Marie Erickson have recently filed an unbriefed joinder in the motion, (Doc. 38), which the Court construes as a second motion.

which provides that "[a]ny claimant may by motion demand that the funds deposited in court … be increased on the ground that they are less than the value of the plaintiff's interest in the vessel and pending freight." The movants invoke Rule F(7) along with 46 U.S.C. § 30511(b)(1)(A) and (B). (Doc. 14 at 1).

The movants' argument is that, since it seeks exoneration on the grounds that the casualty and "all resultant losses and/or damages … were caused or occasioned by the acts or omissions of others," (Doc. 1 at 2-3), the plaintiff must have a tort claim against one or more "others" for the loss of its barges. (Doc. 15 at 2). The movants assume the "other" is ORC. The value of that claim, they say, must be included in the value of the barges and thus to the security posted under Rule F. The plaintiff denies that the value of any such claim must be considered but maintains that, in any case, the instant motion is premature.

## DISCUSSION

> We conclude that the owner who retains the sum of the damages which have been awarded him for the loss of his ship and freight has not surrendered "the amount or value" [citation omitted] of his interest in the ship; that he has not given up the "whole value of the vessel" [citation omitted]; that he has not transferred "his interest in such vessel and freight" [citation omitted].

*O'Brien v. Miller*, 168 U.S. 287, 306-07 (1897). "It follows that the shipowner, therefore, in the case before us, to the extent of the damages paid on account of the collision, was liable to the creditors of the ship …." *Id*. The Supreme Court offered several rationales in support of this conclusion.

First, the Court noted that, when a vessel has been wrongfully destroyed by the fault of another, "there exists in the owner a right to require the restoration of his property, either in specie or by a money payment as compensation for a failure to restore the property." 168 U.S. at 303. "Manifestly, if the option was afforded the owner of the ship to receive back his property or its value, he could not, by electing to take its value, refuse to surrender the amount as a condition to

obtaining the benefit of the act." *Id*. Since the value of the ship as restored by the tortfeasor would be the proper measure of value for limitation purposes, so too would be the value of the monetary compensation given by the tortfeasor in lieu of a physical restoration.

Second, such a rule is "in conformity with the general maritime law of Europe," the leading expositors of which served as "the sources from which the principles embodied in the act of congress were derived." 168 U.S. at 304. Under that general maritime law, "the obligation of the owner was to surrender a sum awarded as damages for the loss of his ship, and, if he did not, he could not avail himself of the limitation of liability." *Id*. In short, "all the maritime writers and codes accord in the conclusion that a surrender, under the right to limit liability, must be made of a sum received by the owner, as the direct result of the loss of the ship, and which is the legal equivalent and substitute for the ship." *Id*. at 306.

In *Phillips v. Clyde Steamship Co.*, 17 F.2d 250 (4th Cir. 1927), the owner filed a limitation action after recovering a sum for damage to its vessel. The owner conceded that the *O'Brien* rule governs when the owner's vessel has been sunk by another's fault but insisted the rule is inapplicable when the vessel retains salvage value. The Fourth Circuit rejected the suggestion, based on *O'Brien* itself and "[a] careful study of the statute," which "fails to disclose a single word or phrase suggestive of the idea that a different rule should apply in a case of partial loss of, or injury to, a vessel from the case of a total destruction." *Id*. at 252.

The rule thus seems clear enough as to claims for a lost or damaged vessel when the claim has already resulted in a monetary recovery: to obtain limitation, the owner must deposit the recovery or provide adequate security in lieu thereof. But the plaintiff has received no such recovery; indeed, it has not brought a formal claim against ORC or anyone else. (Doc. 22 at 1, 3). The movants argue that such claims nevertheless must be considered.

"The clear purpose of congress was to require the shipowner, in order to be able to claim the benefit of the limited liability act, to surrender to the creditors of

3

the ship *all rights of action* which were directly representative of the ship and freight." *O'Brien*, 168 U.S. at 303 (emphasis added).  The same general maritime authorities on which the *O'Brien* Court relied for the proposition that recovered damages must be surrendered are also quoted by the Court for the proposition that "it suffices for [the owner's] discharge to surrender *all claims* in respect of the ship and its freight" and that "it is sufficient for exoneration of the owners if *all claims and causes of action* having reference to the vessel and freight are abandoned by them." *Id*. at 304 (emphasis added; internal quotes omitted). "Indeed, that a *right of action* for the value of the owner's interest in a ship and freight is to be considered as a substitute for the ship itself was decided in this court in the case of *Sheppard v. Taylor*, 5 Pet. 675." *Id*. at 305 (emphasis added). These pronouncements are dicta, since the owner in *O'Brien* had received a monetary recovery, but they are the best evidence the parties have provided of the Supreme Court's position.

In *Guillot v. Cenac Towing Co*., 366 F.2d 898 (5th Cir. 1966), the limitation plaintiff impleaded third parties and asserted against them claims for indemnity and/or contribution should the owner be cast in judgment as to any of the limitation claimants. *Id*. at 910.  The claimants asserted that the owner's action required it to increase its valuation and security by the amount of their claims (since this would be the amount the owner would seek as indemnity or contribution). *Id*.  The former Fifth Circuit did not reject the claimants' position on the grounds that the owner had yet to recover on its indemnity/contribution claim.  On the contrary, the Court quoted the first sentence of *O'Brien* quoted in the preceding paragraph. *Id*.  The *Guillot* Court also quoted a leading treatise for the proposition that "[t]he shipowner's collateral rights against tortfeasors arising out of the accident or voyage must also be accounted for and added to the

4

stipulation or assigned to the trustees,"[2] which proposition, the Court pronounced, "correctly states" the rule. *Id*. This portion of *Guillot* is dicta (since the panel ultimately rejected the claimants' position on the ground that claims for indemnity or contribution are not claims for loss of or damage to the vessel), but of the cases cited by the parties it provides the clearest expression of the view taken by the Court of Appeals covering this district.

But not the only one. In *Geotechnical Corp. v. Pure Oil Co*., 196 F.2d 543 (5th Cir. 1952), "[i]t is conceded that [the owner's pending] claim against [a third party for loss of the vessel] is a part of the vessel to be covered by stipulation or transfer." *Id*. at 201 (citing *O'Brien*). The *Geotechnical* Court also cited *In re: Petition of Navigazione Libera Triestina,* 34 F.2d 150 (E.D.N.Y. 1929). In that case, the Court reviewed *O'Brien*, *Phillips* and other authorities, then concluded that "if the petitioner has any right of action against the shipwright it should be assigned to the trustee." *Id*. at 152. Other decisions cited by the movants are to similar effect.

Against this armada of cases, the plaintiff sends only *D&L Marine Transportation, Inc. v. Suard Barge Service, Inc*., 2002 WL 126644 (E.D. La. 2002). Because the opinion does not specify whether the limitation plaintiff's claim was for damage to its vessel, the Court's decision not to require the value of the claim to be accounted for is not necessarily inconsistent with the movants' cases, and the opinion's exclusive reliance on *Guillot* suggests the claim was for indemnity or contribution, as in that case. Even could *D&L* be read as involving a claim for damage to the owner's vessel, its result would depend on a misreading of *Guillot* and thus be unpersuasive.

The plaintiff next argues that, whatever the import of the cited cases and others like them, the 2006 amendments to Title 46 "clearly d[o] not allow for the

---

[2] 366 F.2d at 910 (quoting 3 <u>Benedict on Admiralty</u> at 451 (6th ed.)). The current version of this treatise contains the same statement, unaltered. 3 <u>Benedict on Admiralty</u>, § 62 at 7-5 (7th rev. ed. 2012).

inclusion of tort claims within the limitation fund." (Doc. 22 at 8-10). The plaintiff notes that Section 30505(a) provides that the liability of a successful limitation plaintiff "shall not exceed the value of the vessel and pending freight" and contrasts this language with previous versions capping such liability at "'the amount or value of the *interest* of such owner in such vessel, and her freight then pending.'" (Doc. 22 at 8-9 (quoting *Navigazione Libera Triestina*, 34 F.2d at 150) (emphasis added by the plaintiff)). The plaintiff suggests, with no accompanying analysis or examples, that the movants' cases relied on the highlighted term to justify their decisions and cannot be sustained under the present version of the statute. The Court declines to undertake on the plaintiff's behalf a detailed examination of the cases or of the legislative history of the 2006 revision. But much less is required to reject the plaintiff's unsupported position.

First, the *O'Brien* Court emphasized the "amount or value" requirement of the previous version of the statute, not the "interest of such owner" language. *See* 168 U.S. at 306-07 (an owner that retains damages awarded for the loss of its ship "has not surrendered 'the amount or value' (section 4283) of his interest in the ship"). Indeed, the Court noted that "Section 4284 describes the liability as 'the whole value of the vessel …,'" and one who retains such damages "has not given up the 'whole value of the vessel (section 4284).'" *Id*. at 307. Plainly the Court did not consider the "interest of such owner" language to be dispositive or even relevant.

Nor did the revisers. The notes accompanying the 2006 revision state that the language the plaintiff finds so critical was omitted "for consistency and to eliminate unnecessary words," not to accomplish any substantive change or to undermine longstanding precedent. Indeed, Section 30505(a) actually retains a reference to an owner's interest, specifying that "the proportionate share of the liability of any one owner shall not exceed that owner's proportionate interest in the vessel and pending freight." As the accompanying notes explain, this is a restatement of the "interest of such owner" language the plaintiff believes is

6

missing, and it makes clear that the significance of that language all along has been only to restrict an owner's exposure to his own, perhaps limited interest – which explains why the *O'Brien* Court found it immaterial to its discussion.

But the movants are not home yet. As noted, the plaintiff has filed no claim against ORC or anyone else in this or any other forum. The Court has carefully reviewed the authorities cited by the movants and, with one exception, they involve a claim that had at least been formally advanced by the owner, if not resolved in favor of the owner. The exception is *Navigazione Libera Triestina*, but even there the owner had "admitted that there were many indications of negligence and liability on the part of" a shipwright. 34 F.2d at 150.

The plaintiff argues the instant motion is premature because it has neither identified nor pressed any claim against a third party. (Doc. 22 at 1-3). The movants retort that their motion cannot be premature because posting security is "the very first thing that is supposed to happen." (Doc. 23 at 1 (emphasis omitted)). But this is a non sequitur. Security has already been posted under Rule F(1), and the question before the Court is whether, under Rule F(7), that security must be increased to account for a theoretically possible but unidentified, unasserted claim against some person or entity that may have wrongfully damaged the vessel in the course of the subject incident. Unless this question is answered in the affirmative, any effort to increase the security on that ground is necessarily premature.

As reflected above, the movants have offered cases for the proposition that "claims," "causes of action," "rights of action" and "collateral rights" must be accounted for in the limitation fund and associated security. They have not, however, made a showing that any time a claimant suspects another's fault in damaging or losing the owner's vessel, the owner must, on that account alone, post security reflecting the supposed value of what may or may not turn out to be a claim or cause of action at all.

There are reasons to question such a proposition. For one, it could hold an owner hostage to any creative claimant capable of identifying fanciful causes of action against which security must be posted. For another, it could force an owner to pursue absurd "claims" because it has already been forced to post security concerning them and must include the assigned value of the imagined claims in any ultimate limitation payout.

The present case affords an example. The movants, given two tries to articulate the plaintiff's claim, manage only this: "Oil Recovery Inc. of Alabama has not filed for limitation and cannot. Does Kirby have a claim against them? Yes." (Doc. 23 at 11). No facts are asserted, no law is cited, and the movants acknowledge they are unprepared to say whether ORC is liable. (Doc. 15 at 2). The Court thus has no basis for concluding there is a legitimate factual and legal basis for the plaintiff to sue ORC, yet the movants would have the plaintiff pungle up security to cover the "value" of this hypothetical claim – of which lagniappe the claimants then could partake if limitation is granted, even though no supportable claim ever existed.

The movants respond that their ipse dixit is enough because the burden is on the plaintiff to demonstrate that its security is sufficient, not on them to show it is not. (Doc. 23 at 11). There is authority to the contrary,[3] but even if the ultimate burden is on the plaintiff, the movants must carry their threshold burden of making a colorable showing that the existing security is insufficient. A bare rhetorical question does not carry even that burden.[4]

---

[3] *In re: Complaint of Marquette Transportation Co.*, 2011 WL 1486119 at *2 (E.D. La. 2011) (the movants bear the burden on a Rule F(7) motion).

[4] *See Cal Dive International, Inc. v. Johnson*, 2001 WL 823728 at *2 (E.D. La. 2001) (without "any evidence in support of his contention that the limitation fund is inadequate and should be increased," the claimant's motion for an increase in security was denied); *In re: D.N.H. Towing Co.*, 1998 WL 51835 at *5 (E.D. La. 1998) ("The mere allegation that the valuation is inaccurate is insufficient to create a fact issue on the value of the limitation fund.").

But suppose it did.  How in the world could the Court assess the value of such a nebulous claim so as to arrive at a figure by which the security must be increased?  The movants propose that the value of the claim be deemed to be the difference in the barges' post-incident salvage value and their pre-incident fair market value.  (Doc. 15 at 10).  That is, they assume the plaintiff's shadowy claim against ORC has a 100% chance of being 100% successful – an assumption that has about a 0% chance of being true.  The truth is that, with absolutely no information concerning what occurred and why, assigning any particular probability of success or degree of success[5] to the plaintiff's purported claim could not be based on anything more than speculation.  In such a circumstance, the only appropriate judicial valuation of the claim would appear to be zero.

There is another aspect to the plaintiff's prematurity argument.  (Doc. 22 at 3-4).  Unsurprisingly, the plaintiff carries hull insurance on the barges, and the claims process is still underway.  Once the insurer pays (and there is no indication it will not), any claim against ORC that the plaintiff might otherwise have will be subrogated to the insurer by operation of law.[6]

The movants deny any prematurity.  At this moment, they insist, the plaintiff has a claim against ORC, and until the insurer pays and receives the claim by subrogation, it is the plaintiff's property and must be accounted for by posting security reflecting its value.  (Doc. 23 at 12-13).

Perhaps the movants' motion is not, due to the pending insurance claim, technically premature in the sense of being unripe.  But it is practically premature, since it apparently will be rendered moot shortly by the payment of insurance proceeds.  Other than perhaps intellectual purity, the movants suggest no reason

---

[5] For all the Court has been shown, any claim by the plaintiff against ORC would be governed by admiralty principles, including comparative fault.

[6] As the movants acknowledge, (Doc. 15 at 4 n.1), insurance proceeds are not part of the value of the vessel for limitation purposes.  *O'Brien*, 168 U.S. at 306 ("[T]he proceeds of an insurance policy need not be surrendered by the shipowner ….") (citing *The City of Norwich*, 118 U.S. 468 (1886)).

the parties, and the Court, should be put to the considerable inconvenience of resolving an issue doomed to become irrelevant almost before the ink is dry.  The Court concludes that they should not.  *Cf. Shewchun v. United States*, 797 F.2d 941, 942 (11th Cir. 1986) (the general rule divesting a trial court of jurisdiction over matters at issue in an appeal serves the "important interes[t] [of] judicial economy, for it spares the trial court from passing on questions that may well be rendered moot by the decision of the Court of Appeals").

The Court's ruling does not leave the claimants without recourse.  Should the insurer deny coverage, they may be able to argue that the issue is unlikely to become moot.  Should they collect adequate evidence of ORC's potential liability to the plaintiff, they may be able to assert that the plaintiff has more than a merely hypothetical cause of action with more than a merely speculative chance of more than merely nominal success.  And should the plaintiff unreasonably delay in bringing an available, supportable claim against ORC, they may be able to request appropriate relief to ensure the plaintiff does not obtain the benefit of limitation at the present funding level and subsequently pursue a claim against ORC without fear that any recovery will be diverted to the claimants.

## CONCLUSION

For the reasons set forth above, the two motion for an order to increase the limitation fund and security therefor, (Docs. 14, 38), are **denied**.

DONE and ORDERED this 8th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE